AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

*October 18, 2024*

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| Cole Martin MILLSAP | ) Case No. **4:24-mj-461** |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   April 18 through October 3, 2024   in the county of            Harris            in the

     Southern     District of        Texas        , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) -<br>21 U.S.C. 846 - | Delivery of a Controlled Substance, fentanyl, Resulting in Death<br>Attempt and Conspiracy |

This criminal complaint is based on these facts:

See attached Affidavit of probable cause

☑ Continued on the attached sheet.

*Complainant's signature*

Steven Gonzalez, DEA Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date:    October 18, 2024

*Judge's signature*

City and state:              Houston, Texas

Christina A. Bryan, United States Magistrate Judge
*Printed name and title*

**4:24-mj-461**

## AFFIDAVIT OF SPECIAL AGENT STEVEN GONZALEZ IN SUPPORT OF CRIMINAL COMPLAINT

1. Your affiant, Special Agent Steven Gonzalez, being duly sworn, deposes and states the following:

2. I, Steven Gonzalez, am a Special Agent (SA) of the United States Drug Enforcement Administration ("DEA"), a law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. I have been employed by the DEA since October 2016 and have received specialized training while attending the DEA Training Academy in Quantico, Virginia, concerning violations of the Controlled Substances Act within Title 21 of the United States Code. Specifically, while there, I received several hundred hours of comprehensive, formalized instruction in such matters as narcotics identification, detection, trafficking, and interdiction; money laundering techniques; and asset identification, seizure, and forfeiture. Prior to being employed by the DEA, I was a technical writer for an aerospace engineering firm located in Stafford, Texas for approximately one year.

4. I am assigned to the DEA Houston Division Office (HDO), High Intensity Drug Trafficking Areas ("HIDTA"). HIDTA is a multi-agency task force that investigates the illegal trafficking of controlled substances and is comprised of agents and investigators from the DEA as well as from state and local law enforcement personnel assigned as Task Force Officers ("TFOs"). Specifically, I have been assigned to the DEA HDO HIDTA Fentanyl / Overdose Task Force, which is tasked with investigating cases that pertain to fatal overdoses resulting from fentanyl toxicity.

5. The United States government, including the Drug Enforcement Agency, is investigating possession with intent to distribute a controlled substance. The investigation concerns possible violations by Cole MILLSAP, aka: "COLE WORLD," of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

6. I reviewed the Houston Police Department (HPD) offense report written by responding HPD Patrol Officer R. Gomez (hereinafter "HPD Officer Gomez"), who Affiant knows to be a certified peace officer, and learned that HPD Officer Gomez discovered the body of Michael Graham, hereinafter referred to as DECEDENT, on April 22, 2024 at 938 Kingwood Drive Apt# 636 Houston, Montgomery County, Southern District of Texas, while responding to a welfare check. Rachel Scott, a friend of the DECEDENT's, was on scene and called in the welfare check after she had been unable to contact the DECEDENT for several days and was unable to open the apartment door, despite having a key. Responding emergency personnel had to force entry into the apartment due to the security bolt being locked from the inside. HPD Officer Gomez discovered the DECEDENT's body alone in the apartment lying on the floor between the couch and an ottoman. On the Ottoman, HPD Officer Gomez found burnt foil, a baggie of powdered suspected narcotics, the DECEDENT's Texas driver's license, a vape, and the television remote. I know from my training and experience that fentanyl is commonly smoked by sprinkling it on foil and holding the foil near a heat source.

7. Affiant reviewed the autopsy report for the DECEDENT prepared by the Montgomery County Forensic Services Department. The autopsy report lists the cause of death as "Toxic effects of fentanyl and clonazepam ('fentanyl toxicity')."

8. DEA Task Force Officer Kyle Kelly received the DECEDENT's cell phone on May 9, 2024, from the DECEDENT's father, Charlie Graham.

9. On May 15, 2024, TFO Kyle Kelly interviewed Rachel Scott, the DECEDENT's friend who called in the welfare check. TFO Kelly found Ms. Scott to be credible and reliable. Ms. Scott provided the passcode to the DECEDENT's cell phone. Ms. Scott stated that the DECEDENT is addicted to fentanyl. Ms. Scott stated that the DECEDENT had recently been released from rehab. Ms. Scott stated that she had gone with the DECEDENT on multiple recent occasions to purchase powder fentanyl from a person whom Ms. Scott knows as Cole.

10. HPD Officer M. Lezak conducted a forensic extraction of the DECEDENT's cell phone. The extraction of the DECEDENT's cell phone contained text messages detailing what I recognize from my training and experience as a narcotics transaction with saved contact "COLE WORLD" and phone number 832-451-7966 on the evening of April 18, 2024.

11. The following are a sampling of the text communications that occurred between the DECEDENT and "COLE WORLD" (later identified as **MILLSAP**) prior to the DECEDENT's death:

- April 18, 2024, 11:08 A.M., DECEDENT: *You got a piece of foil at crib?.*
- April 18, 2024, 11:09 A.M., **COLE WORLD**: *Maybe my mom do*
- April 18, 2024, 11:09 A.M., **COLE WORLD**: *You got a couple dollars for her?*
- April 18, 2024, 11:09 A.M., **COLE WORLD**: *Isabell give you some*
- April 18, 2024, 11:13 A.M., DECEDENT: *Yea ill pay $22 if thats cool*
- April 18, 2024, 11:13 A.M., DECEDENT: *$2 for the sheet of foil?*
- April 18, 2024, 11:13 A.M., **COLE WORLD**: *Yeah that's fine*
- April 18, 2024, 11:23 A.M., DECEDENT: *Address*
- April 18, 2024, 11:29 A.M., DECEDENT: *Make it a 30*
- April 18, 2024, 11:29 A.M., **COLE WORLD**: *Bet*

- April 18, 2024, 11:29 A.M., DECEDENT: *Ill give $32 for foil and what not*

- April 18, 2024, 11:29 A.M., **COLE WORLD**: *How much you looking for*

- April 18, 2024, 11:30 A.M., DECEDENT: *Foil?*

- April 18, 2024, 11:30 A.M., DECEDENT: *Just a sheet to smoke off of*

The text communications that occurred between the DECEDENT and **MILLSAP** continued throughout the day prior to the DECEDENT's death. The following includes the final text messages between the DECEDENT and **MILLSAP**:

- April 18, 2024, 7:41 P.M., DECEDENT: *Hey if you come to me I'll throw you $4 subs on top.*

- April 18, 2024, 7:41 P.M., **COLE WORLD**: *Send the addy.*

- April 18, 2024, 7:42 P.M. DECEDENT: *4 subs plus the cash im paying for the 30 bag. I'll give you $20 cash and 4 subs for a $35 bag if cool?*

- April 18, 2024, 7:42 P.M. **COLE WORLD**: *Ok*

- April 18, 2024, 7:42 P.M. DECEDENT: *938 Kingwood Drive, but can you come now?*

- April 18, 2024, 7: 42 P.M. **COLE WORLD**: *Ok hold on Im coming.*

- April 18, 2024, 7:43 P.M. DECEDENT: *Can you do a $40 bag? I'll throw in some benzos for ya too.*

- April 18, 2024, 7:43 P.M. **COLE WORLD**: *Yeah, have the mine what xans?*

- April 18, 2024, 7:45 P.M. DECEDENT: *Klonopin, I can throw like 8.5 MG Klons that are strong.*

- April 18, 2024, 7: 45 P.M. **COLE WORLD**: *Ok bet*

- April 18, 2024, 7:46 P.M. DECEDENT: *Can you do a $50? That's a lot of shit I'm throwing on top because the K pins go for $5.*

- April 18, 2024, 7:46 P.M. **COLE WORLD**: *Yeah*

- April 18, 2024, 7:46 P.M. DECEDENT: *Ok- if can hurry man ill throw an extra Klonopin in.*

- April 18, 2024, 7:53 P.M. **COLE WORLD**: *On the way*

- April 18, 2024, 7:53 P.M. DECEDENT: *Ok*

- April 18, 2024, 8:05 P.M. **COLE WORLD**: *Be fast when I get there.*

- April 18, 2024, 8:05 P.M. DECEDENT: *I will be fast.*

- April 18, 2024, 8:11 P.M. **COLE WORLD**: *Here*

- April 18, 2024, 8:11 P.M. DECEDENT: *Ok*

- April 19, 2024, 2:56 P.M. **COLE WORLD**: *Yo*

- April 19, 2024, 4:50 P.M. DECEDENT: *Sup*

- April 19, 2024, 4:51 P.M. **COLE WORLD**: *Aye you trying to sell the rest of the subs you got or trade for em?*

- April 19, 2024, 9:10 P.M. DECEDENT: *I can trade for em.*

- April 19, 2024, 9:18 P.M. **COLE WORLD**: *Bet how many you got, bring them over here.*

12. Analysis did not observe any other text messages to occur after the last message from "COLE WORLD" at 9:18 P.M. on April 19, 2024.

13. Affiant knows from training and experience that a "bag" commonly refers to the amount of money worth of narcotics that is being purchased. Also, based on my knowledge and experience as well as the fact of this case, I believe that, in addition to purchasing illegal narcotics from "COLE WORLD" with money, the DECEDENT was also trading other drugs with "COLE WORLD" during this transaction as well. I specifically believe that the DECEDEENT received fentanyl from "COLE WORLD" in return for cash and drugs.

14. Law enforcement investigators obtained subscriber information via administrative subpoena to T-Mobile for the phone number of "COLE WORLD" 832-451-7966 saved into the DECEDENT's phone. The subscriber information for "COLE WORLD" 832-451-7966 revealed the name of COLE **MILLSAP** as the customer of the listed phone number. Law enforcement investigators obtained MILLSAP's Texas Driver's License and learned that **MILLSAP** has a date of birth of January 10, 2002 and an address of 19719 Hurst Wood Dr Humble, TX 77346.

15. Harris County, Texas district court records indicate that on April 18, 2024, MILLSAP was on felony bond with a condition that he wear a GPS monitoring device. Affiant obtained MILLSAP's GPS monitoring location records via grand jury subpoena. Affiant compared MILLSAP's GPS locations to the text messages found in the DECEDENT's phone and learned that MILLSAP's location data corroborates the drug deal described in the text messages. At the beginning of the text message thread described in paragraph 30, MILLSAP had been stationary for approximately an hour at 19722 Sweetgum Forest Ct, Humble, TX, 77346. 19722 Sweetgum Forest Ct, Humble, TX, 77346 is the residence directly behind and adjacent to the MILLSAP's home. Then, from when MILLSAP stated he was "on the way" to when he said he was "here," MILLSAP's GPS location traveled from 19722 Sweetgum Forest Ct, Humble, TX, 77346 to the DECEDENT's apartment. MILLSAP's GPS location remained stationary at the DECEDENT's apartment for approximately four minutes. MILLSAP's GPS location then returned to 19722 Sweetgum Forest Ct, Humble, TX, 77346 where it again remained stationary.

16. *Controlled Fentanyl Purchases 1:* On August 29, 2024, HPD Officer R. Estrada, acting in an undercover capacity (UC), telephonically contacted **MILLSAP** at 832-451-7966, the phone

number for "COLE WORLD" from the DECEDENT's phone. MILLSAP agreed to sell the undercover officer $40 worth of fentanyl powder. The undercover officer met MILLSAP in a parking lot located at 140 Farm Market 1960 Bypass Rd E, Humble, Sothern District of Texas. The entire transaction was under law enforcement surveillance. MILLSAP arrived in a black jeep wrangler bearing license plate LYL1446 ("the jeep"). MILLSAP sold the undercover officer approximately 0.4 grams of suspected powder fentanyl in a small plastic baggie for $40. A chemist with the Houston Forensic Science Center confirmed that the substance contained fentanyl and had a total weight of 0.31 grams. Prior to the controlled purchase, Affiant and the undercover officer obtained MILLSAP's Texas driver's license photo. Affiant and the undercover officer observed that the individual who sold the fentanyl to the undercover officer is in fact Cole MILLSAP. Affiant obtained the vehicle registration for the jeep and learned that the listed owner is Kelly Millsap and the VIN is 1C4GJXANXJW293502. A law enforcement database that Affiant has used on many occasions to accurately associate individuals reflects that Kelly Millsap is MILLSAP's mother.

17. *Controlled Fentanyl/Heroin Purchase 2:* On September 4, 2024, the undercover officer contacted MILLSAP again on phone number 832-451-7966 to purchase narcotics. MILLSAP agreed to sell the undercover officer $280 worth of fentanyl powder and $250 worth of heroin. Prior to the transaction Task Force Officer Michael Pait set up physical surveillance of the the jeep, which was located at MILLSAP's house, 19719 Hurst Wood Drive, Humble, Texas 77346. Public records indicate that MILLSAP's home is owned MILLSAP's mother. Before the scheduled transaction with the undercover officer, TFO Pait observed MILLSAP exit his house holding a small plastic sandwich baggie. MILLSAP was talking on his phone at the

time. MILLSAP put the plastic baggie on top of the front passenger tire of the jeep and then went back inside his house. A few minutes later, an unknown male also talking on his phone approached the jeep from the street. TFO Pait observed the unknown male retrieve the small plastic baggie and replace it with a $20 bill. The unknown male then left the location. MILLSAP then exited his house with a backpack, retrieved the $20 bill, got in the jeep, and proceeded to the prearranged transaction with the undercover officer. Law enforcement surveillance followed MILLSAP in the jeep to 140 Farm Market 1960 Bypass Rd E, Humble, Southern District of Texas, where MILLSAP met and completed the transaction with the undercover officer. MILLSAP sold the undercover officer 4 grams of powder fentanyl and 3.9 grams of heroin for $530. The fentanyl and heroin was packaged in small plastic baggies similar to the one TFO observed MILLSAP exit his house with and place on the tire of the jeep. A chemist with the Houston Forensic Science Center confirmed that the substances were in fact 3.55 grams of fentanyl and 3.9 grams of heroin.

18. *Controlled Fentanyl Purchase* 3: On October 3, 2024, the UC again contacted **MILLSAP** telephonically at 832-451-7966. MILLSAP agreed to sell $3,470 worth of powder fentanyl to the undercover officer. **MILLSAP**, again using the jeep, met the UC at a Seven-Eleven convenience store located at 1373 FM 1960 Bypass Road East, Humble, Southern District of Texas. MILLSAP sold the undercover officer approximately 105.4 grams of fentanyl powder for $3,470. Field tests confirmed that the powder contains fentanyl. During the transaction, MILLSAP warned the undercover officer that some of the fentanyl powder is very strong and should be diluted before it is used. Electronic surveillance showed that MILLSAP traveled to the controlled buy from his house.

Based on the foregoing, your affiant respectfully submits that probable cause exists to believe that Cole Martin MILLSAP has committed a violation of Title 21 U.S.C. Section 846 and 841 (a)(1), specifically; delivery of a controlled substance, namely fentanyl, resulting in death.

I declare under penalty of perjury that the foregoing is true and correct.

Steven Gonzalez
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me telephonically the 18th day of October, 2024, and I hereby find probable cause.

Honorable Judge Christina A. Bryan
United States Magistrate Judge
Southern District of Texas